**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on January 25, 2021, which may be different from its entry on the record.**

**IT IS SO ORDERED.**

**Dated: January 25, 2021**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

In re:                                    )       Case No. 19-11224
                                          )
MEGAN MARIE TETER,                        )       Chapter 7
                                          )
          Debtor.                         )       Judge Arthur I. Harris

MEMORANDUM OF OPINION[1]

This case is currently before the Court on the motion of the debtor, Megan

Marie Teter, for an award of attorney's fees under the Equal Access to Justice Act

("EAJA"), 28 U.S.C. § 2412.  The debtor seeks an award of attorney's fees based

on the U.S. Trustee's filing of a motion to dismiss the debtor's bankruptcy case for

abuse under 11 U.S.C. § 707(b), a position the debtor maintains was not

substantially justified.  As explained more fully below, the debtor's motion for

attorney's fees must be denied because a debtor who successfully defends a

---

[1] This Opinion is not intended for official publication.

contested matter within a bankruptcy case is not a "prevailing party" in a "civil action" under 28 U.S.C. § 2412 and therefore falls outside the scope of the waiver of sovereign immunity provided under the EAJA.

## JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order 2012-7 of the United States District Court for the Northern District of Ohio.

## BACKGROUND

The debtor filed for relief under chapter 7 of the Bankruptcy Code on March 7, 2019. In the schedules filed with her petition, the debtor listed nonpriority general unsecured debt totaling $96,538.05, which included $56,321.31 in student loan debt. The debtor claimed that her debts were primarily business debts and filled out a statement of exemption from presumption of abuse under 11 U.S.C. § 707(b)(2) (Docket No. 1).

Under § 704(b) of the Bankruptcy Code, the U.S. Trustee must review all materials filed by chapter 7 debtors who are individuals and, not later than ten days after the date of the first meeting of creditors, file with the court a statement as to whether the debtor's case would be presumed to be an abuse under § 707(b). The

2

U.S. Trustee must then, within thirty days, either file a motion to dismiss or convert under § 707(b) or file a statement setting forth the reasons the U.S. Trustee does not consider such a motion to be appropriate.  *See* 11 U.S.C. § 704(b)(2).  The U.S. Trustee must perform these duties even for cases in which debtors assert that their debts are not primarily consumer debts, such as the current case.

On April 25, 2019, the U.S. Trustee timely filed a statement of presumed abuse (*see* docket entry dated April 25, 2019).  On May 28, 2019, the U.S. Trustee timely filed a motion to dismiss the debtor's case for abuse under § 707(b) (Docket No. 15).  In the § 707(b) motion, the U.S. Trustee argued that, notwithstanding the debtor's assertions to the contrary, the debtor's debts were primarily consumer debts because a majority of the debtor's total debt, including debt from student loans, was "incurred primarily for personal, family, or household purposes."  *See* 11 U.S.C. § 101(8).  The U.S. Trustee also claimed that, based on the U.S Trustee's own calculations, there was a presumption of abuse under § 707(b)(2), despite the debtor's Schedule J which listed a net monthly income of negative $84.91.  The U.S. Trustee claimed that several expenses listed on the debtor's Schedule J were without substantiation or explanation.  The U.S. Trustee argued that if the contested expenses were adjusted, the debtor's net monthly income would increase and the debtor would have the ability to repay her creditors,

3

justifying a dismissal under § 707(b)(2).  The U.S. Trustee also argued, in the alternative, that the totality of the debtor's circumstances necessitated a dismissal under § 707(b)(3).

On June 5, 2019, the debtor filed an amended petition and schedules in which she claimed her debts were neither primarily consumer debts nor primarily business debts (Docket No. 18).  On the same day, the debtor also responded to the U.S. Trustee's motion to dismiss (Docket No. 19).  The debtor argued that, under the profit motive test, her student loan debt was not "consumer debt" and, taking into account all of her debt, she was not a debtor "whose debts are primarily consumer debts" within the meaning of §§ 101(8) and 707(b) of the Bankruptcy Code.  The debtor also claimed that she provided all information necessary to confirm the expenses contested in the U.S. Trustee's motion to dismiss.  The debtor asserted that the U.S. Trustee's motion was in reality a disguised motion for extension of time because the U.S. Trustee's calculations were based on what the U.S. Trustee merely believed a properly calculated means test would show.

The Court held an initial hearing on June 18, 2019, and scheduled an evidentiary hearing for November 14, 2019 (Docket No. 23).

On October 14, 2019, the debtor moved for summary judgment on the U.S. Trustee's motion to dismiss (Docket No. 29).  The debtor argued that, because

4

her student loan debts were not consumer debts, she was not a debtor "whose debts are primarily consumer debts" under § 707(b). According to the debtor, she incurred her student loan debt "in the furtherance of her undergraduate education," and "[h]er purpose in undertaking those obligations was to pay for an education and earn a degree that would maximize her opportunity for employment in business" (Docket No. 29, pg. 3).

The Court denied the motion on December 11, 2019 (Docket Nos. 35 & 36). In denying the motion, the Court noted that there is conflicting case law and no binding precedent as to whether student loans constitute "consumer debt" within the meaning of 11 U.S.C. § 101(8). Without adopting any particular line of case law, the Court indicated that the test in the treasury regulation governing deductibility of expenses for education may perhaps serve as a useful framework.

> Under Section 262 of the Internal Revenue Code, a taxpayer may not deduct "personal, living, or family expenses." This language is close to the definition of "consumer debt" contained in the 1978 Bankruptcy Act—"debt incurred by an individual primarily for a personal, family, or household purpose." The treasury regulation governing deductibility of expenses for education, 26 C.F.R. 1.162-5, is apparently unchanged since 1967. It provides that educational expenditures in order to meet the minimum educational requirements for employment are generally personal expenditures and are not deductible as ordinary and necessary business expenses.

5

(Docket No. 35, pgs. 6-7) (internal citations omitted).  This framework has the advantage of not relying on a debtor's subjective intent for obtaining a college degree.  *Id.*  In denying summary judgment, the Court noted:

> At this stage, the Court is uncertain as to what is the best line of case law for analyzing whether the debtor's student loan debt constitutes "consumer debt."  If the better approach is to find that the debtor incurred the debt to attend college and attempt to obtain a college degree, full stop.  Then the debt will most likely qualify as a "consumer debt" because there are few things more personal than obtaining an education.  Nor would there be any need to inquire as to a debtor's many reasons for obtaining that education.  Under this approach, the debtor in the current case would not be entitled to summary judgment.  Nor has the U.S. Trustee filed his own motion for summary judgment on this issue.

> On the other hand, if the better approach is to inquire further as to why the debtor wanted to attend college and obtain a college degree, then the issue of summary judgment is a closer one.  The record contains some evidence that the debtor wanted to obtain a college degree in order to qualify for a job with the best salary she could obtain.  But at the summary judgment phase, the Court must construe the evidence in a light most favorable to the nonmoving party, and questions of intent may not be best suited for summary judgment.  Rather, the Court has reason to believe, in the language of *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), "that the better course would be to proceed to a full trial."  For example, it may turn out that the U.S. Trustee's 707(b) motion must be denied even if the debtor's debts are "primarily consumer debts."  In short, the Court believes that the better course is developing a complete record on all 707(b) issues, including whether the debtor's debts are "primarily consumer debts," especially if one or more of these issues is to be heard by a reviewing court.

*Id.* at 8-9.

6

On December 19, 2019, the Court denied the debtor's motion for reconsideration in a brief marginal order and set a new evidentiary hearing date of April 23, 2020 (Docket Nos. 41 & 42). On the same day, the chapter 7 trustee reported that there were no assets to administer for the benefit of creditors (Docket No. 40).

On January 15, 2020, the Court issued a second amended scheduling order moving the evidentiary hearing date to May 11, 2020 (Docket No. 45).

On March 2, 2020, the debtor again moved for summary judgment. The debtor argued that, even using all the U.S. Trustee's other figures for calculating the means test, there would be no presumption of abuse if the Court were to find that the "imputed income" reported on the debtor's payment advices for health insurance for the debtor's domestic partner was not "income received" under 11 U.S.C. § 101(10A) (Docket No. 48).

On March 11, 2020, the Court held a telephonic status conference at which it set briefing deadlines regarding the debtor's most recent motion for summary judgment and directed the parties to continue exchanging information in hopes of reaching a consensual resolution.

On March 24, 2020, the U.S. Trustee withdrew the § 707(b) motion to dismiss, stating that the U.S. Trustee had become aware of facts and circumstances

7

which made the motion unwarranted at that time (Docket No. 49). Although the U.S. Trustee's notice of withdrawal provided no further details, the debtor's March 2, 2020, motion for summary judgment mentioned that the debtor was currently facing the challenge of a high-risk pregnancy and other serious health issues (Docket No. 48, pg. 3).

On April 23, 2020, the debtor moved for attorney's fees under the portion of the EAJA codified at 28 U.S.C. § 2412, claiming that she was a "prevailing party" and that the U.S Trustee's motion to dismiss was not substantially justified (Docket No. 50). On May 13, 2020, the U.S. Trustee objected to the debtor's motion for attorney's fees (Docket No. 56). The U.S. Trustee argued that the debtor was not a prevailing party on the motion to dismiss; that the U.S. Trustee's position was justified because the debtor's debts were primarily consumer debts and a presumption of abuse arose based on the U.S. Trustee's calculation of the means test; and that special circumstances would make an award of attorney's fees unjust. The debtor filed a reply to the U.S. Trustee's objection on May 18, 2020 (Docket No. 58).

On May 19, 2020, the Court held an initial hearing on the motion for attorney's fees. At the hearing, the Court outlined its initial analysis of the debtor's motion. The Court noted that the EAJA might not apply because § 707(b)

8

of the Bankruptcy Code contains its own fee shifting provisions in § 707(b)(4) and (b)(5) that appear to preclude a fee award if the § 707(b) motion is filed "by the trustee or United States trustee." 11 U.S.C. § 707(b)(5). The Court also noted that, with respect to bankruptcy cases, the EAJA would likely be limited to adversary proceedings, which are essentially full civil lawsuits within bankruptcy cases (Docket No. 63, pg. 8). Because the attorneys for the debtor and the U.S. Trustee had not addressed these specific arguments, the Court invited the parties to submit additional briefing on the issues raised by the Court.

On May 20, 2020, the debtor received an order of discharge (Docket No. 59).

On July 20, 2020, the debtor filed a supplemental brief (Docket No. 68), and on September 3, 2020, the U.S. Trustee filed a supplemental brief (Docket No. 75).

On September 22, 2020, the Court heard further argument on the debtor's motion for an award of attorney's fees. The Court noted that while the supplemental briefs did analyze the interplay between the EAJA and the fee shifting provisions specific to § 707(b) of the Bankruptcy Code, the Court was still looking for analysis addressing whether the term "civil action" as used in the EAJA encompasses disputes in bankruptcy cases other than adversary proceedings. The Court therefore invited the parties to submit additional briefing. *See*

9

*U.S. Nat'l. Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446-47 (1993) (court retains the independent power to identify and apply the proper construction of governing law and does not stray beyond its constitutional or prudential boundaries in doing so); *see also* Fed. R. Civ. P. 56(f) (court must give notice and reasonable time to respond before granting summary judgment on ground not raised by a party); Fed. R. Bankr. P. 7056 (applying Fed. R. Civ. P. 56 in adversary proceedings); Fed. R. Bankr. P. 9014(c) (including Bankruptcy Rule 7056 among Part VII rules generally applicable to contested matters).

On November 25, 2020, the U.S. Trustee filed a brief arguing that a bankruptcy case is not a "civil action" within the meaning of the EAJA (Docket No. 80).  On December 1, 2020, the debtor filed a brief arguing that a bankruptcy case and/or a contested matter within a bankruptcy case is a "civil action" within the meaning of the EAJA (Docket No. 81).  The Court then took the matter under advisement.

## DISCUSSION

While the debtor's motion for attorney's fees raises many potential issues, a threshold question may be dispositive:

> Does the debtor's motion fall within the scope of the waiver of
> sovereign immunity provided under the EAJA?

If the answer to this question is "no," and the debtor is not a prevailing party in a "civil action" within the meaning of 28 U.S.C. § 2412, then all the other potential issues are moot.

*Waivers Of Sovereign Immunity, Including The Scope Of The Waiver, Must Be Strictly Construed*

Under well-established case law, waivers of sovereign immunity such as those contained in the EAJA must be strictly construed. *See F.A.A. v. Cooper*, 566 U.S. 284 (2012); *Ardestani v. I.N.S.*, 502 U.S. 129 (1991); *Buchwald Capital Advisors, LLC v. Sault Ste. Marie Tribe of Chippewa Indians (In re Greektown Holdings LLC)*, 917 F.3d 451 (6th Cir. 2019). "Any ambiguities in the statutory language are to be construed in favor of immunity . . . so that the Government's consent to be sued is never enlarged beyond what a fair reading of the text requires." *F.A.A. v. Cooper*, 566 U.S. at 290 (internal citations omitted). Ambiguity exists if there is a plausible interpretation of the statute that would not authorize an award of attorney's fees in favor of the debtor. *Id.* at 290-91.

The Supreme Court has had a number of opportunities to opine on the scope of the waiver of sovereign immunity under the EAJA and other statutes awarding attorney's fees, costs, and money damages against the United States. The Supreme Court's decisions in *Ardestani v. I.N.S.* and *F.A.A. v. Cooper* are particularly apt. In *Ardestani*, the Supreme Court was asked to decide whether the EAJA applied to

11

administrative deportation proceedings. The Supreme Court looked to the definition of what constituted an adversary adjudication under the EAJA and concluded that administrative deportation proceedings are not adversary adjudications "under section 554" and thus do not fall within the category of proceedings for which the EAJA has waived sovereign immunity and authorized an award of attorney's fees and costs. *Ardestani v. I.N.S.*, 502 U.S. at 139. Relying on prior precedent, the Court noted that Congress intended for the Immigration and Naturalization Act of 1952 to supplant the Administrative Procedures Act in immigration proceedings. The Court held that the meaning of "an adjudication under 554" was plain and unambiguous. More importantly, the Court added that its conclusion was reinforced by the limited nature of waivers of sovereign immunity.

> The EAJA renders the United States liable for attorney's fees for which it would not otherwise be liable, and thus amounts to a partial waiver of sovereign immunity. Any such waiver must be strictly construed in favor of the United States. . . .
>
> Because we conclude that administrative immigration proceedings do not fall "under section 554" and therefore are wholly outside the scope of the EAJA, this case is distinguishable from those cases in which we have recognized that, once Congress has waived sovereign immunity over certain subject matter, the Court should be careful not to "assume the authority to narrow the waiver that Congress intended." *United States v. Kubrick,* 444 U.S. 111, 118, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979); see, *e.g., Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 95, 111 S.Ct. 453, 457,

12

112 L.Ed.2d 435 (1990) ("Once Congress has made such a waiver, we think that making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver"); *Sullivan v. Hudson,* 490 U.S. 877, 892, 109 S.Ct. 2248, 2258, 104 L.Ed.2d 941 (1989) (holding that Social Security administrative proceedings held on remand from a district court order "are an integral part of the 'civil action' for judicial review," and thus that attorney's fees for representation on remand are available under the civil action provisions of the EAJA, 28 U.S.C. § 2412).

*Id.* at 137.

In *FAA v. Cooper*, the plaintiff alleged that the unlawful disclosure of confidential medical information by several federal agencies had caused him mental and emotional distress. *FAA v. Cooper*, 566 U.S. at 289. He filed a civil action seeking an award of "actual damages" under the Privacy Act of 1974. The Supreme Court held that the Privacy Act does not unequivocally authorize damages for mental or emotional distress and therefore does not waive the government's sovereign immunity from liability for such harms.

We have said on many occasions that a waiver of sovereign immunity must be "unequivocally expressed" in statutory text. See, *e.g., Lane v. Peña,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996); *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). Legislative history cannot supply a waiver that is not clearly evident from the language of the statute. *Lane, supra,* at 192, 116 S.Ct. 2092. Any ambiguities in the statutory language are to be construed in favor of immunity, *United States v. Williams,* 514 U.S. 527, 531, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995), so that the

13

Government's consent to be sued is never enlarged beyond what a fair reading of the text requires, *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685-686, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983) (citing *Eastern Transp. Co. v. United States,* 272 U.S. 675, 686, 47 S.Ct. 289, 71 L.Ed. 472 (1927)). Ambiguity exists if there is a plausible interpretation of the statute that would not authorize money damages against the Government. *Nordic Village, supra,* at 34, 37, 112 S.Ct. 1011.

The question that confronts us here is not whether Congress has consented to be sued for damages under the Privacy Act. That much is clear from the statute, which expressly authorizes recovery from the Government for "actual damages." Rather, the question at issue concerns the *scope* of that waiver. For the same reason that we refuse to enforce a waiver that is not unambiguously expressed in the statute, we also construe any ambiguities in the scope of a waiver in favor of the sovereign. *Lane, supra,* at 192, 116 S.Ct. 2092.

*Id.* at 290-91 (emphasis in original).

Courts have "never required that Congress use magic words," but instead require that "the scope of Congress'[s] waiver be clearly discernable from the statutory text . . . [i]f it is not, then we take the interpretation most favorable to the Government." *Id.* at 291.

We do not claim that the contrary reading of the statute accepted by the Court of Appeals and advanced now by respondent is inconceivable. But because the Privacy Act waives the Federal Government's sovereign immunity, the question we must answer is whether it is plausible to read the statute, as the Government does, to authorize only damages for economic loss. *Nordic Village,* 503 U.S., at 34, 37, 112 S.Ct. 1011. When waiving the Government's sovereign immunity, Congress must speak unequivocally. *Lane,* 518 U.S., at 192, 116 S.Ct. 2092. Here, we conclude that it did not. As a consequence, we adopt an interpretation of "actual damages" limited

14

to proven pecuniary or economic harm. To do otherwise would expand the scope of Congress' sovereign immunity waiver beyond what the statutory text clearly requires.

*Id.* at 299.

And while this Court does not and cannot deny the clarity of the waiver of sovereign immunity as to lawsuits that are obviously "civil actions," *see Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126-27 (2015), the debtor's motion in this bankruptcy case fairly presents a question as to the *scope* of that waiver.

### *The Equal Access to Justice Act*

The debtor seeks an award of attorney's fees under 28 U.S.C. § 2412(b) and (d). Section 2412 of the Judicial Code provides in pertinent part:

> (b) Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.
>
> . . . .
>
> (d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the

15

position of the United States was substantially justified or that special circumstances make an award unjust.

> (B) A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412.

Congress enacted the EAJA in 1980. Pub. L. 96-481, 94 Stat. 2321. In enacting the EAJA, Congress provided for an award of attorney's fees to a prevailing party "in any civil action" as well as in certain administrative adjudications. The provision permitting an award of attorney's fees in civil actions is codified in § 2412 of Title 28 (the Judicial Code). The provision permitting an award of attorney's fees in certain administrative adjudications is codified primarily in §§ 504, 551, and 554 of Title 5 of the United States Code. The

16

debtor's motion in this bankruptcy case only seeks an award of attorney's fees under 28 U.S.C. § 2412.

> ### Is There A Plausible Interpretation Of The Phrase "Civil Action" In 28 U.S.C. § 2412 That Would Not Extend The Waiver Of Sovereign Immunity To The Debtor's Bankruptcy Case Or The U.S. Trustee's § 707(B) Motion Filed Within The Bankruptcy Case?

Congress did not define "civil action" when it enacted the EAJA in 1980. At the time the EAJA was enacted, the entry for "civil action" in Black's Law Dictionary was as follows:

> **Civil action.** Action brought to enforce, redress, or protect private rights. In general, all types of actions other than criminal proceedings. Gilliken v. Gilliken, 248 N.C. 710, 104 S.E.2d 861, 863.
>
> The term includes all actions, both those formerly known as equitable actions and those known as legal actions, or, in other phraseology, both suits in equity and actions at law. Thomason v. Thomason 107 U.S. App. D.C. 27, 274 F.2d 89, 90.
>
> In the great majority of states which have adopted rules or codes of civil procedure as patterned on the Federal Rules of Civil Procedure, there is only one form of action known as a "civil action." The former distinctions between actions at law and suits in equity, and the separate forms of those actions and suits, have been abolished. Rule of Civil Proc. 2; New York CPLR § 103(a).

Black's Law Dictionary 222 (5th ed. 1979). "[The] term [action] in its usual legal sense means a suit brought in a court; a formal complaint within the jurisdiction of a court of law." *Id.* at 26; *see also Sullivan v. Hudson*, 490 U.S. 877 (1989).

Unfortunately, despite the passage of forty years, there appear to be no published cases from the Sixth Circuit or other courts of appeals that have analyzed whether bankruptcy cases or disputes within bankruptcy cases other than adversary proceedings fall within the scope of the term "civil action" under the EAJA, let alone do so under the Supreme Court's framework for delineating the scope of waivers of sovereign immunity.

Certainly, the phrase "civil action" could be read as simply distinguishing between actions that are not criminal. *Di Bella v. United States*, 369 U.S. 121 (1962) (distinguishing order denying motion to suppress in criminal case from established exceptions to final judgment rule in "civil actions"). Under this broad interpretation, "civil actions" would encompass all formal court proceedings that are not criminal proceedings. But the phrase "civil action" could also be defined more narrowly as synonymous with the identical term used by the Federal Rules of Civil Procedure since at least 1937 and appearing elsewhere in the Judicial Code since it was recodified in 1948. In other words, "civil actions" would constitute all formal lawsuits subject to the Federal Rules of Civil Procedure initiated by the filing of a complaint. This narrower definition of "civil action" would presumably not include bankruptcy cases, which, in 1980 as well as today, are not subject to

18

the Federal Rules of Civil Procedure, are not initiated by the filing of a complaint, and have no plaintiff or defendant.

Rather than being part of a dichotomy that recognizes court proceedings as either civil or criminal, this narrower definition of "civil action" would treat "civil actions" and "bankruptcy cases" as separate subsets within the universe of all formal court proceedings.

In order to determine whether this narrower definition of "civil action" is a plausible interpretation of the term as used in the EAJA, some historical analysis is instructive.

Rules 2 and 3 of the Federal Rules of Civil Procedure have essentially remained unchanged since their enactment in 1937. Rule 2 states that "[t]here is one form of action—the civil action." Rule 3 states that "[a] civil action is commenced by filing a complaint with the court."

> The prescription in Federal Rule of Civil Procedure 2 that there shall be one form of action has been characterized as the most fundamental rule of all. A number of important consequences follow from Rule 2: the forms of action are abolished, the separate equity practice of the federal courts is eliminated, the old equity rules are superseded, the Conformity Act no longer superimposes state laws or rules upon the procedure in federal courts, and the significance of the term "cause of action," which formerly was a matter of serious dispute, has been eliminated. Today, there is a single procedural framework for all federal civil proceedings, regardless of the substantive claim at issue, including those in admiralty.

19

4 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1042 (4th ed. 2008) (hereinafter "Wright & Miller") (internal citations omitted).

Congress's use of the term "civil action" goes back at least to the recodification of the Judicial Code (Title 28 of the United States Code) in 1948. Pub. L. 80-773, 62 Stat. 869 (1948). It appears that all of the instances in which Congress used the term "civil action" in the 1948 recodification of the Judicial Code are consistent with the term "civil action" as used in Rules 2 and 3 of the Federal Rules of Civil Procedure, which remain essentially unchanged since 1937—namely, a formal lawsuit commenced by filing a complaint with the court. Examples where Congress used the term "civil action" in the 1948 recodification of the Judicial Code include the following:

### § 1331. Federal question; amount in controversy

The district courts shall have original jurisdiction of all *civil actions* wherein the matter controversy exceeds [$3,000], and arises under the Constitution, laws or treaties of the United States.

### § 1332. Diversity of citizenship; amount in controversy

The district courts shall have original jurisdiction of all *civil actions* where the matter controversy exceeds [$3,000], and is between:

(1) Citizens of different States;

20

(2) Citizens of a State, and foreign states or citizens or subjects thereof; . . .

## § 1346. United States as defendant

(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

(1) Any *civil action* against the United States for the recovery of any [tax];

(2) Any other *civil action* or claim against the United States, not exceeding [$10,000], founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

(b) [T]he district courts . . . shall have exclusive jurisdiction of *civil actions* on claims against the United States . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

. . . .

(d) The district courts shall not have jurisdiction under this section of:

(1) Any *civil action* or claim for a pension;

(2) Any *civil action* to recover fees, salary, or compensation for official services of officers of the United States.

## § 2401. Time for commencing action against United States

Every *civil action* commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. . . .

Pub. L. 80-773 , 62 Stat. 869 (emphasis added).

The 1948 recodification of the Judicial Code also contains at least two instances where Congress chose to use different language in referring to certain judicial proceedings: (1) bankruptcy matters and proceedings, and (2) intervention by the United States in any "action, suit, or proceeding" where the constitutionality of an act of Congress is called into question.

### § 1334. Bankruptcy matters and proceedings

The district courts shall have original jurisdiction, exclusive of the courts of the States, *of all matters and proceedings in bankruptcy*.

### § 2403. Intervention by United States; constitutional question

(a) In *any action, suit or proceeding* in a court of the United States . . . wherein the constitutionality of any Act of Congress affecting the public interest is drawn into question, the court shall certify such fact to the Attorney General and shall permit the United States to intervene . . .

Pub. L. 80-773 , 62 Stat. 869 (emphasis added).

"[I]t is a normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." *Taniguchi v. Kan Pacific Saipan, Ltd.,* 566 U.S. 560, 571 (2012) (internal citations omitted). On the other hand, " '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate

22

inclusion or exclusion.' " *Russello v. United States,* 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)). These canons suggest that when Congress recodified the Judicial Code in 1948 the term "civil action" meant something different from "matters and proceedings in bankruptcy" as used in § 1334. Similarly, the term "civil action" also meant something different from (and was presumably as subset of) "any action, suit or proceeding" as used in § 2403.

In 1948, § 2412 of the Judicial Code generally provided that the United States would be liable for fees and costs "only when such liability is expressly provided for by Act of Congress." Pub. L. 80-773, 62 Stat. 869. Subsection 2412(b) did allow costs to the prevailing party for certain actions under §§ 1346(a) and 1491. Pub. L. 80-773, 62 Stat. 869.

When Congress next amended § 2412 in 1966, it generally gave courts the authority to award costs (but not attorney's fees) against the United States to a "prevailing party in any civil action":

> Except as otherwise specifically provided by statute, a judgment for costs . . . but not including the fees and expenses of attorneys may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action. . . .

Pub. L. 89-507, 80 Stat. 308 (1966).

23

When Congress enacted the EAJA in 1980, it amended § 2412 to include, for the first time, a right to attorney's fees under certain circumstances. In doing so, it continued to use the terms "prevailing party" and "civil action" already present in previous versions of § 2412.

From this history, it is certainly plausible to interpret "any civil action" in the EAJA as the term has been historically used in Rules 2 and 3 of the Federal Rules of Civil Procedure and as the term was used in earlier versions of the Judicial Code, including earlier versions of § 2412. As Justice Breyer wrote for a unanimous Supreme Court:

> When a statutory term is " 'obviously transplanted from another legal source,' " it " 'brings the old soil with it.' " *Hall* v. *Hall*, 584 U.S. —— –, ––––, 138 S.Ct. 1118, 1128 (2018) (quoting Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 537 (1947)) . . . .

*Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019).

If this historical interpretation of "civil action" is a plausible interpretation of the same term that Congress chose when it amended § 2412 in 1980, did Congress unambiguously intend to include bankruptcy cases as "civil actions" when it waived sovereign immunity in enacting the EAJA?

In the words of Judge Thapar in another context: "Bankruptcy is different." *Ritzen Grp., Inc. v. Jackson Masonry, LLC (In re Jackson Masonry, LLC)*,

24

906 F.3d 494, 498 (6th Cir. 2018), *aff'd sub nom. Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582 (2020).  Unlike ordinary civil litigation, "[a] bankruptcy case is an aggregation of individual disputes, many of which could be entire cases on their own.  *Id.*  A bankruptcy case has a debtor and creditors and often a trustee.  But there is no "v." in bankruptcy cases, except for adversary proceedings, which are "essentially full civil lawsuits carried out under the umbrella of bankruptcy cases."  *Id.* at 500 (quoting *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1694 (2015)).  Bankruptcy cases do not have plaintiffs or defendants.  A bankruptcy case is not begun by filing a complaint.  Rather, the Bankruptcy Reform Act of 1978, like its predecessor, provides for the filing of a voluntary or involuntary petition.  11 U.S.C. §§ 301-303; Pub. L. 95-598, 92 Stat. 2549.  Furthermore, under the language of the Bankruptcy Code: "The commencement of a voluntary case under a chapter of [the Bankruptcy Code] constitutes an order for relief under such chapter."  11 U.S.C. § 301.  In contrast, under the Federal Rules of Civil Procedure, an order of relief is by no means automatic.  Rather, "relief" is something that you ask for in a complaint or other pleading and hope the court will include in its judgment.  *See*, *e.g.*, Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain . . . a demand for the

relief sought."); Fed. R. Civ. P. 54(b) ("final judgment should grant the relief to which each party is entitled").

In addition, the grant of bankruptcy jurisdiction contained in the Judicial Code in effect in 1980 gave the district courts "original jurisdiction, exclusive of the courts of the States, *of all matters and proceedings in bankruptcy*" (emphasis added). Thus, unlike the federal question and diversity jurisdiction statutes, which have both used the phrase "civil actions" since at least 1948, the statute for bankruptcy jurisdiction instead used the phrase "matters and proceedings in bankruptcy." When Congress next amended § 1334 under the Bankruptcy Amendments and Federal Judgeship Act of 1984, § 1334 provided for "exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11." Pub. L. 98-353, 98 Stat. 333. In other words, the bankruptcy jurisdictional statute has continued to use language different from the federal question and diversity jurisdiction statutes. *See also Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 369 (2006) ("Bankruptcy jurisdiction, as understood today and at the time of the framing, is principally *in rem* jurisdiction.") (internal citations omitted).

Furthermore, the Federal Rules of Civil Procedure have historically not applied to bankruptcy cases except to the extent provided by other rules adopted by

26

the Supreme Court. In 1980, Rule 81 of the Federal Rules of Civil Procedure provided in part: "These rules . . . do not apply to proceedings in bankruptcy . . . except in so far as they may be made applicable thereto by rules promulgated by Supreme Court of the United States." Similarly, in 1980, Rule 1 of the Federal Rules of Civil Procedure provided in pertinent part:

> These rules govern the procedure in the United States district courts in all suits of a civil nature whether cognizable as cases at law or in equity or in admiralty, with the exceptions stated in Rule 81.

The first set of comprehensive, codified bankruptcy rules was issued in 1973. Wright & Miller at § 1016. This version of bankruptcy rules, using a three-digit numbering system, was in place when the EAJA was enacted in 1980. A copy of the April 24, 1973, Supreme Court order adopting bankruptcy rules and official bankruptcy forms effective October 1, 1973, as well as the official rules and forms are reprinted in 37 L. Ed. 2d at xxxi – cxxxviii. A new set of bankruptcy rules using the current four-digit numbering system did not become effective until August 1, 1983. *See* Wright & Miller at § 1016.

In addition, in 1964, Congress enacted 28 U.S.C. § 2075, giving the Supreme Court the power to establish rules and forms governing cases under Title 11. See Pub L. No. 88-623, 78 Stat. 1001. This rulemaking authority is

27

separate and apart from the rulemaking authority under 28 U.S.C. § 2072, governing the Federal Rules of Civil Procedure.

The Federal Rules of Bankruptcy Procedure apply to matters and proceedings in bankruptcy cases, regardless whether such matters or proceedings are heard by a district judge or a bankruptcy judge. *See* Fed. R. Bankr. P. 1001; Fed. R. Civ. P. 81(a)(2); *Diamond Mortg. Corp. of Ill. v. Sugar*, 913 F.2d 1233, 1240-41 (7th Cir. 1990); *see also* 1987 Advisory Committee Note to Fed. R. Bankr. P. 9001(4) ("Since a case or proceeding may be before a bankruptcy judge or a judge of the district court, 'court or judge' is defined to mean the judicial officer before whom the case or proceeding is pending.").

Nor is it clear how one would translate "prevailing party" in a bankruptcy case when there is no plaintiff or defendant. Is every debtor who receives a discharge a prevailing party? What about a trustee who recovers assets for the benefit of creditors? How about creditors who receive some distribution from property of the debtor's estate? If the debtor gets a discharge and the trustee recovers sufficient assets to pay creditors a substantial dividend on their claims, are the debtor, trustee, and creditors all prevailing parties? If the U.S. Trustee moves unsuccessfully under Bankruptcy Rules 1017(e)(1) and 4004(b)(1) for an extension of time to file a § 707(b) motion or an adversary complaint objecting to the

28

debtor's discharge and the debtor later receives a discharge under chapter 7, is the debtor a "prevailing party" for purposes of the EAJA?

The Supreme Court addressed the definition of "prevailing party" in *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001):

> In designating those parties eligible for an award of litigation costs, Congress employed the term "prevailing party," a legal term of art. Black's Law Dictionary 1145 (7th ed.1999) defines "prevailing party" as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded <in certain cases, the court will award attorney's fees to the prevailing party>.—Also termed *successful party*." This view that a "prevailing party" is one who has been awarded some relief by the court can be distilled from our prior cases.
>
> . . . .
>
> . . .These decisions, taken together, establish that enforceable judgments on the merits and court-ordered consent decrees create the "material alteration of the legal relationship of the parties" necessary to permit an award of attorney's fees. . . .
>
> . . . Our precedents thus counsel against holding that the term "prevailing party" authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties.

532 U.S. at 603-05 (citations and footnotes omitted).

It is unclear how this definition works in a bankruptcy case that consists of various matters and proceedings, and no plaintiffs or defendants, aside from adversary proceedings, which the Supreme Court has noted are essentially full civil

29

lawsuits carried out under the umbrella of bankruptcy cases. *See Bullard v. Blue Hills Bank*, 135 S. Ct. at 1694. Nor is the language defining parties eligible for fee awards in 28 U.S.C. § 2412 a good fit for bankruptcy trustees, who are often the most likely parties to pursue avoidance actions against the United States. *See Gower v. Farmers Home Admin. (In re Davis)*, 899 F.2d 1136, 1142-45 (11th Cir. 1990) (trustee who prevailed in adversary proceeding against federal agency did not qualify as "party" eligible to apply for fees under the EAJA).

Presumably, Congress could have used broader language in delineating the scope of the EAJA. For example, when Congress enacted the Bankruptcy Reform Act of 1978, it used broader language in describing both the scope of the automatic stay under § 362(a) and the scope of the criminal exception to the automatic stay in § 362(b)(1). Section 362, as written in the Bankruptcy Reform Act of 1978 provided in pertinent part:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—
>
> > (1) the commencement or continuation, including the issuance or employment of process, *of a judicial, administrative, or other proceeding* against the debtor that was or could have been commenced before the commencement of the case under this title . . . .
> >
> > . . . .

(b) The filing of a petition under section 301, 302, or 303 of this title does not operate as a stay—

> (1) under subsection (a) of this section, of the commencement or continuation of a *criminal action or proceeding* against the debtor;

Pub. L. 95-598, 92 Stat. 2549 § 3 (emphasis added).


At the time the EAJA was enacted, Black's Law Dictionary defined

"proceeding," in part, as:

> In a general sense, the form and manner of conducting juridical business before a court or judicial officer. Regular and orderly progress in form of law, including all possible steps in an action from its commencement to the execution of judgment.

Black's Law Dictionary 1083 (5th ed. 1979).

In *Bloate v. United States*, 559 U.S. 196 (2010), the Supreme Court defined

the term proceeding as follows:

> A court proceeding is defined as "[a]n act or step that is part of a larger action" and "an act done by the authority or direction of the court." Black's Law Dictionary 1324 (9th ed.2009) (hereinafter Black's Law) (internal quotation marks omitted). The granting of a defense request for an extension of time to prepare pretrial motions constitutes both "[a]n act or step that is part of [the] larger [criminal case]" and "an act done by the authority or direction of the court."

559 U.S. at 218-19.

In *Ball v. Memphis Bar-B-Q Co.*, 34 F.Supp.2d 342 (E.D. Va. 1999), *aff'd,*

228 F.3d 360 (4th Cir. 2000), the district court provided a somewhat similar

definition:

> A "proceeding", at base, is an action of some form before a tribunal.
> *See* [*Black's Law Dictionary (5th ed.1979)*] at 1083 ("proceeding" is
> defined as, "[i]n a general sense, the form and manner of conducting
> juridical business before a court or judicial officer. Regular and
> orderly progress in form of law, including all possible steps in an
> action from its commencement to the execution of judgment").

*Ball v. Memphis Bar-B-Q*, 34 F.Supp.2d at 345.

> "Proceeding" has a more general meaning [than "action"]; it may
> refer to any step taken by a court in the course of an "action." . . . Its
> technical and older meaning is an original matter, independent of an
> "action" or not qualifying as an "action" in the traditional sense. Id. at
> 1083-84.

*R. E. Linder Steel Erection Co. v. Alumisteel Sys., Inc.*, 88 F.R.D. 629, 633 (D. Md.

1980).

The term proceeding would therefore cover all "act[s] done by the authority

or direction of the court," *see Bloate v. United States*, 559 U.S. at 219, including

the items listed in the debtor's most recent brief (Docket No. 81, pgs. 12-13), and

all matters and proceedings in bankruptcy cases.  It would also cover

miscellaneous matters in court such as civil commitment proceedings under

18 U.S.C. § 4248.  *Cf. United States v. Searcy*, 880 F.3d 116, 124 (4th Cir. 2018)

(civil commitment proceeding is not the type of "civil action" Congress had in

mind when it enacted the catchall statute of limitation codified at 28 U.S.C. § 1658(a)).  In other words, one plausible reading of "civil action" as used in 28 U.S.C. § 2412 would be to treat "civil actions" and "bankruptcy cases" as separate subsets within the universe of all formal court proceedings.

To recap, a number of factors suggest that, aside from adversary proceedings, the scope of Congress's waiver of sovereign immunity in the EAJA in 1980 does not extend to "prevailing parties," however they might be defined, in bankruptcy cases:

- the historical use of "civil action" throughout the Judicial Code as synonymous with "civil action" as used in Rules 2 and 3 of the Federal Rules of Civil Procedure since 1937;

- the use of different language in the same Judicial Code when referring to bankruptcy cases and proceedings;

- the use of broader language in the same Judicial Code when referring to intervention by the United States under § 2403 when the constitutionality of an act of Congress is brought into question – "*any action, suit or proceeding* in a court of the United States";

- the inapplicability of the Federal Rules of Civil Procedure to bankruptcy cases unless incorporated by the Bankruptcy Rules or other rules of the Supreme Court;

- the absence of a "v." in bankruptcy cases (other than in adversary proceedings that are essentially full civil lawsuits carried out under the umbrella of bankruptcy cases); no plaintiffs or defendants, just a debtor, creditors, and usually a trustee; which does not readily translate into the traditional "prevailing party" requirement that was present in 28 U.S.C. § 2412 even before Congress enacted the Equal Access to Justice Act in 1980.

33

Is it plausible for bankruptcy cases to fall within a broad interpretation of the term "civil action?" Perhaps. But Supreme Court precedent requires that waivers of sovereign immunity be strictly construed. Ambiguity exists if there is a plausible interpretation of the statute that would not encompass an award of attorney's fees in bankruptcy cases aside from adversary proceedings. *See F.A.A. v. Cooper*, 566 U.S. at 291 (citing *United States v. Nordic Village, Inc.,* 503 U.S. 33, 34, 37 (1992)) ("Ambiguity exists if there is a plausible interpretation of the statute that would not authorize money damages against the Government."); *In re Greektown Holdings LLC*, 917 F.3d at 457 (in the context of tribal sovereign immunity, "any doubt is to be resolved in favor of Indian tribes.").

For purposes of the debtor's current motion for attorney's fees, it is enough to note that a plausible interpretation of the EAJA exists under which Congress did not intend "civil actions" to encompass bankruptcy cases. And if the scope of Congress's waiver is not clearly discernable from the statutory text in light of traditional interpretive tools, then we take the interpretation most favorable to the United States. *See F.A.A. v. Cooper*, 566 U.S. at 291; *United States v. Nordic Village, Inc.,* 503 U.S. at 34, 37.

34

*The Case Law Cited By The Debtor Fails To Address This Issue Or Support An
Unambiguous Waiver*

Although the debtor cites to case law that simply assumes the scope of the

EAJA extends to bankruptcy cases or contested matters within a bankruptcy case,

none of these case analyzed whether bankruptcy cases or contested matters fall

within the scope of the term "civil action" under the EAJA. *See*, *e.g.*, *O'Connor v.*

*U.S. Dep't of Energy*, 942 F.2d 771 (10th Cir. 1991) (after seeking attorney's fees

under the EAJA related to contested matter, Tenth Circuit noted that sole issue

presented on appeal is whether a bankruptcy court is "a court" under 28 U.S.C.

§ 2412(d)(1)(A)); *In re Mendez*, No. 7-07-11092 SA, 2008 WL 5157922, at *3

(Bankr. D. N.M. Sept. 26, 2008) (debtor was prevailing party for purposes of the

EAJA after U.S. Trustee withdrew § 707(b) motion); *In re Collins*,

No. 3:18-BK-0630-JAF, 2019 WL 3948383, (Bankr. M.D. Fla. June 13, 2019)

(holding that the EAJA does not extend to actions taken in contested matters by

panel trustees, but acknowledging "that the Office of the U.S. Trustee is, in

general, subject to the EAJA" and citing *In re Terrill*, No. 05-87180-BJH-7,

2006 WL 2385236 (Bankr. N.D. Tex. July 27, 2006)); *In re Terrill*, (after denying

U.S. Trustee's § 707(b) motion, court issued short memorandum and order finding

debtor to be prevailing party under the EAJA and finding that U.S. Trustee's

35

position was not substantially justified). Nor has the Court been able to uncover any case law directly on point.

Also, a number of the cases cited by the debtor involved adversary proceedings, which are "essentially full civil lawsuits carried out under the umbrella of the bankruptcy case," *Bullard v. Blue Hills Bank*, 135 S. Ct. at 1694, as opposed to an award of fees either for prevailing in the bankruptcy case overall or for prevailing in a particular contested matter within a bankruptcy case. *See*, *e.g.*, *United States Small Bus. Admin. v. Esmond (In re Esmond),* 752 F.2d 1106 (5th Cir.1985). In *Esmond*, the SBA filed an adversary complaint objection to the debtors' discharge. The debtors then moved for attorney's fees under the EAJA. After the district court upheld the bankruptcy court's denial of attorney's fees, the Fifth Circuit reversed. The Fifth Circuit's opinion simply assumed that the EAJA applied to the SBA's adversary complaint and held that the agency failed to meet its burden of proving that its position was "substantial justified." *Accord Gumport v. Interstate Commerce Comm'n (In re Transcon Lines)*, 178 B.R. 228, 232 (Bankr. C.D. Cal. 1995) (granting trustee's motion for attorney's fees under the EAJA for trustee's successful adversary proceeding against ICC, without analyzing applicability of the EAJA to trustee's adversary proceeding).

36

The debtor also discusses case law involving the authority of the bankruptcy court to award fees under the EAJA as a "court of the United States" (Docket No. 81, pgs. 21-26). This dispute in the case law apparently arises from the exclusion of bankruptcy courts from the definition of courts of the United States in § 451 of the Judicial Code (28 U.S.C. § 451). This case law involves the authority of the bankruptcy judge to issue an award of attorney's fees under 28 U.S.C. § 2412. Similar conflicts have arisen over a bankruptcy judge's authority to impose sanctions under 28 U.S.C. § 1927, which imposes attorney's fees and costs upon any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." *See Grossman v. Wehrle (In re Royal Manor Mgmt., Inc.)*, 652 F. App'x 330, 341-42 (6th Cir. 2016) (acknowledging circuit split but holding that bankruptcy courts have authority to impose sanctions under § 1927).

While the undersigned judge believes that whether a bankruptcy court is a court of the United States should be irrelevant because bankruptcy judges are, by definition "a unit of the district court," 28 U.S.C. § 151; *accord In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 105 (3d Cir. 2008), this dispute is of no moment to the present case in light of the Supreme Court's decision in *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015). In *Wellness*, the Supreme Court adopted the

implied consent standard articulated in *Roell v. Withrow*, 538 U.S. 580 (2003), and held that "Article III is not violated when the parties knowingly and voluntarily consent to adjudication by a bankruptcy judge." *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. at 1939, 1948.

In the present case, the debtor maintains that this Court has the authority to enter an award of attorney's fees under the EAJA and has asked this Court to do just that. Such action, if not express consent, appears to meet the implied consent standard in *Wellness*. And, presumably, the U.S. Trustee has no objection to this Court entering an order holding that a debtor who successfully defends a contested matter within a bankruptcy case is not a "prevailing party" in a "civil action" under 28 U.S.C. § 2412.

In support of her argument that a bankruptcy case is a civil action, the debtor cites to *Allfirst Bank v. Lewis (In re Lewis)*, 257 B.R. 431 (Bankr. D. Md. 2001). However, *Lewis* did not determine that a bankruptcy case is a civil action. In *Lewis*, the court determined that "a bankruptcy case is a civil *proceeding*" for the purposes of the Soldiers' and Sailors' Civil Relief Act. *Id.* at 435 (emphasis added). The Soldiers' and Sailors' Civil Relief Act "applies to *any judicial or administrative proceeding* commenced in any court or agency in any jurisdiction subject to this chapter." 50 U.S.C. § 3912(b) (emphasis added). The language of

the EAJA is not so broad; fees "may be awarded to the prevailing party in *any civil action* brought by or against the United States." 28 U.S.C. § 2412(a)(1). Furthermore, the bankruptcy proceeding at issue in Lewis was a creditor's adversary proceeding seeking the nondischargeability of certain debts. *In re Lewis*, 257 B.R. at 433.

The debtor also cites to *In re Perry*, No. 02-13366, 2002 WL 31160132 (Bankr. W.D. Tenn. Sept. 26, 2002), in which a bankruptcy judge transferred a bankruptcy case within the Western District of Tennessee from the Western Division to the Eastern Division pursuant to 28 U.S.C. § 1404(a). Because there was no local bankruptcy rule on point, and because the bankruptcy change of venue statute, 28 U.S.C. § 1412 and Bankruptcy Rule 1014, are both silent with respect to intra-district transfers, the bankruptcy court followed the change in venue provision applicable to "civil actions" in 28 U.S.C. § 1404(a) and approved the intra-district transfer. Presumably, the bankruptcy change of venue statute and Bankruptcy Rule 1014 are silent with respect to intra-district transfers because such transfers can be handled at the discretion of the judges within the district, at least in the absence of any applicable local bankruptcy rules. *Cf.* N.D. Ohio Local Bankruptcy Rule 1073-1(d): "Nothing in the Local Bankruptcy Rules shall preclude the reassignment of cases, proceedings, or matters from one Judge to

39

another Judge with the consent of both Judges.").  In any event, this broad reading of "civil action" with respect to an intra-district transfer of a bankruptcy case offers little guidance for how the same term in 28 U.S.C. § 2412 must be interpreted under the Supreme Court's framework for delineating the scope of waivers of sovereign immunity.

Perhaps the closest case on point in terms of analyzing whether bankruptcy cases are "civil actions" for purposes of the EAJA is *In re Sisk*, 973 F.3d 945 (9th Cir. 2020), *as amended* (Sept. 24, 2020).  In *Sisk*, the bankruptcy court declined to confirm the debtors' chapter 13 plans, despite the absence of any objections by parties in interest.  After the Bankruptcy Appellate Panel affirmed, the Ninth Circuit reversed.  The debtors then moved for attorney's fees under the EAJA, arguing that they were prevailing parties against the bankruptcy court and the BAP. In a short order, the Ninth Circuit denied the fee applications, holding that chapter 13 bankruptcy cases are not civil actions brought by or against the United States for the purposes of the EAJA.  Instead, they are brought by debtors seeking relief from their creditors.  *Id.*

The debtor also cites to several cases and other sources for the proposition that the merger of law and equity means that a bankruptcy case is a civil action. However, the Supreme Court has long recognized a difference between

40

proceedings in bankruptcy and suits at law and equity. *See Schumacher v. Beeler,* 293 U.S. 367 (1934) (noting that "by virtue of its Art. I authority over bankruptcies the Congress could confer on the regular district courts jurisdiction of 'all controversies at law and in equity, as distinguished from proceedings in bankruptcy, between trustees as such and adverse claimants' "); *accord Nat'l Mut. Ins. Co. of Dist. of Col. v. Tidewater Transfer Co.*, 337 U.S. 582, 594 (1949) (discussing *Schumacher v. Beeler*).

The absence of a significant amount of cases applying the EAJA in bankruptcy cases, other than adversary proceedings, may be instructive in and of itself. Aside from *Sisk*, the few reported cases do not analyze whether a bankruptcy case is a "civil action," let alone do so under the Supreme Court's framework for delineating the scope of waivers of sovereign immunity.

The debtor correctly notes that another fee-shifting statute may present similar questions as to whether disputes within bankruptcy cases other than adversary proceedings fall within the scope of the term "civil action." As part of the Tax Equity and Fiscal Responsibility Act of 1982, Congress amended § 7430 of the Tax Code (Title 26 of the United States Code). Pub. L. 97-248, 96 Stat. 324 § 292. Under § 7430, if certain circumstances are met, a prevailing party may be awarded costs and fees "[i]n any administrative or court proceeding which is

41

brought by or against the United States." Although "any administrative or court proceeding" seems broader in scope than "any civil action," another subsection of the statute defines "court proceeding" as "any civil action brought in a court of the United States (including the Tax Court and the United States Court of Federal Claims)." 26 U.S.C. § 7430(c)(6). As with the EAJA, the Court has been unable to find any case law analyzing whether a bankruptcy case or a bankruptcy matter other than an adversary proceeding constitutes a "civil action" within the meaning of 26 U.S.C. § 7430(c)(6). *Cf. Grewe v. I.R.S. (In re Grewe)*, 4 F.3d 299 (4th Cir. 1993) (§ 7430 applied to debtors' adversary complaint alleging that IRS violated discharge injunction because bankruptcy courts constitute courts of the United States). The Court need not decide the scope of this separate fee shifting provision.

### *Does The Waiver Of Sovereign Immunity Under The Equal Access to Justice Act Unambiguously Extend To "Prevailing Parties," In Individual "Contested Matters" Within A Bankruptcy Case?*

In her most recent supplemental brief, the debtor argues that even if the scope of the waiver of sovereign immunity does not extend to prevailing parties in bankruptcy cases, the waiver of sovereign immunity nevertheless does extend to the U.S. Trustee's § 707(b) motion as a "contested matter" (Docket No. 81). In support of this argument the debtor cites Bankruptcy Rule 9002.

42

Rule 9002 provides in pertinent part:

**Rule 9002. Meanings of Words in the Federal Rules of Civil Procedure When Applicable to Cases Under the Code**

(1) "Action" or "civil action" means an adversary proceeding or, when appropriate, a contested petition, or proceedings to vacate an order for relief or to determine any other contested matter.

Although Rule 9002 of the Federal Rules of Bankruptcy was not adopted until 1983, *see* Wright & Miller at § 1016, the Bankruptcy Rules in effect in 1980 were promulgated by the Supreme Court pursuant to 28 U.S.C. § 2075, effective October 1, 1973. *See* April 24, 1973, Supreme Court order adopting bankruptcy rules and official bankruptcy forms effective October 1, 1973 (reprinted at 37 L. Ed. 2d at xxxi).

Rule 902, the predecessor to Rule 9002 provided, in part:

**Rule 902. Meanings of Words in the Federal Rules of Civil Procedure When Applicable in Bankruptcy Cases**

The following words and phrases used in the Federal Rules of Civil Procedure made applicable in bankruptcy cases by these rules have the meanings herein indicated unless they are inconsistent with the context:
(1) "Action" or "civil action" means an adversary proceeding, or, when appropriate, a proceeding on a contested petition, to vacate an adjudication, or to determine another contested matter.

37 L. Ed. 2d at lxxvi.

43

Although the debtor asserts that Bankruptcy Rule 9002 (or its predecessor Rule 902) makes the contested matter of the U.S. Trustee's § 707(b) motion an "action" or "civil action" within the meaning of the EAJA, the debtor simply reads too much into this Bankruptcy Rule. As the Advisory Committee Note to Rule 902 indicates:

> In particular, the Federal Rules of Civil Procedure largely govern an adversary proceeding, which is to be read for "action" or "civil action" whenever either of these terms appears in any of the Civil Rules made applicable by the Bankruptcy Rules in Part VII. Rule 121 [now Rule 1018] also makes many of the Civil Rules applicable to a proceeding on a contested petition or to vacate an order for relief, and for this purpose "action" or "civil action" is to be read as referring to such a proceeding. When the Civil Rules are made applicable to a contested matter by or pursuant to Rule 914 [now rule 9014], "action" or "civil action" refers to the contested matter in this context.

10 Collier on Bankruptcy ¶ 9002.01 (16th ed. 2020).

This portion of Bankruptcy Rule 9002 means nothing more than to substitute "adversary proceeding" for "action" or "civil action" whenever a bankruptcy rule makes a civil rule applicable to an adversary proceeding, and to substitute "contested matter" for "action" or "civil action" whenever a bankruptcy rule makes a civil rule applicable to a contested matter.

Here are three examples to illustrate the application of Bankruptcy Rule 9002 and its predecessor Bankruptcy Rule 902.

44

If Civil Rule 17 is made applicable to a contested matter under Bankruptcy Rules 7017 and 9014, then Civil Rule 17 should be read in part as follows:

> (a) *Real Party in Interest*.
>
> > (1) *Designation in General*. ~~An action~~ [A contested matter] must be prosecuted in the name of the real party in interest. . . .

Similarly, if Civil Rule 36 is made applicable to a contested matter under Bankruptcy Rules 7036 and 9014, then Civil Rule 36 should be read in part as follows:

> (a) *Scope and Procedure*.
>
> > (1) *Scope*. A party may serve on any other party a written request to admit, for purposes of the pending ~~action~~ [contested matter] only, the truth of any matters within the scope of Rule 26(b)(1) . . .
> > . . . .
>
> > (b) *Effect Of An Admission; Withdrawing Or Amending It*. . . . Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the ~~action~~ [contested matter] and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the ~~action~~ [contested matter] on the merits. . . .

Similarly, if Civil Rule 42 is made applicable to a contested matter under Bankruptcy Rules 7042 and 9014, then Civil Rule 42 should be read in part as follows:

45

(a) *Consolidation.* If ~~actions~~ [contested matters] before the court involve a common question of law or fact, the court may:

> (1) join for hearing or trial any or all matters at issue in the ~~actions~~ [contested matters];

> (2) consolidate the ~~actions~~ [contested matters]; or

> (3) issue any other orders to avoid unnecessary cost or delay.

This portion of Rule 9002 (and its predecessor Rule 902) does nothing more than explain how to interpret the terms "action" or "civil action" when civil rules containing those terms are made applicable to contested matters by bankruptcy rules.

There are additional problems with the debtor's Rule 9002 argument. First, a bankruptcy rule cannot expand the scope of the waiver of sovereign immunity in a statute. *See* 28 U.S.C. § 2075 ("Such rules shall not abridge, enlarge, or modify any substantive right."); Pub. L. 88-623, 78 Stat. 1001; *cf. F.A.A. v. Cooper*, 566 U.S. at 290 ("Legislative history cannot supply a waiver that is not clearly evident from the language of the statute.") (internal citations omitted); *Ardestani v. I.N.S.*, 502 U.S. at 136 (same).

Second, there is no indication that Congress ever intended to award attorney's fees under the EAJA to a prevailing party in something smaller than a "civil action" such as a discovery dispute, a motion for leave to file an amended

46

complaint, or a motion *in limine*. *See Hanrahan v. Hampton,* 446 U.S. 754 (1980)

("[The respondents] may [not] fairly be said to have "prevailed" by reason of the

Court of Appeals' other interlocutory dispositions, which affected only the extent

of discovery. As is true of other procedural or evidentiary rulings, these

determinations may affect the disposition on the merits, but were themselves not

matters on which a party could "prevail" for purposes of shifting his counsel fees

to the opposing party under § 1988."); *accord Comm'r, I.N.S. v. Jean*, 496 U.S.

154, (1990) (*"Any given civil action can have numerous phases. While the parties'

postures on individual matters may be more or less justified, the EAJA—like other

fee-shifting statutes—favors treating a case as an inclusive whole, rather than as

atomized line-items."); *Kitchen Fresh, Inc. v. N.L.R.B.*, 729 F.2d 1513 (6th Cir.

1984) ("[T]he procedural victory itself is insufficient to establish that the petitioner

has prevailed for the purposes of an award of attorneys' fees pursuant to the Equal

Access to Justice Act.").

 A "contested matter" in a bankruptcy case is any dispute other than an

adversary proceeding.

> Whenever there is an actual dispute, other than an adversary
> proceeding, before the bankruptcy court, the litigation to resolve that
> dispute is a contested matter. For example, the filing of an objection to
> a proof of claim, to a claim of exemption, or to a disclosure statement
> creates a dispute which is a contested matter. Even when an objection
> is not formally required, there may be a dispute. If a party in interest

> opposes the amount of compensation sought by a professional, there is
> a dispute which is a contested matter.

Advisory Committee Note to Fed. R. Bankr. P. 9014.

Unlike adversary proceedings, which are "essentially full civil lawsuits carried out under the umbrella of the bankruptcy case," a contested matter is "an undefined catchall for other issues the parties dispute." *Bullard v. Blue Hills Bank*, 135 S. Ct. at 1694. "As a leading treatise notes, the list of contested matters is 'endless' and covers all sorts of minor disagreements." *Id.* (quoting 10 Collier ¶ 9014.01, at 9014-3).

In the present bankruptcy case, the U.S. Trustee's § 707(b) motion was a contested matter. Similarly, the debtor's motion for an award of attorney's fees is a contested matter.

Although the debtor at times describes the U.S. Trustee's efforts in this case as seeking to deny the debtor a discharge, a § 707(b) motion is not an objection to the debtor's discharge under § 727 of the Bankruptcy Code and Bankruptcy Rule 4004. In contrast with motions under § 707(b), which are governed by Bankruptcy Rule 1017(e), objections to discharge generally require the filing of an adversary complaint. *See* Fed. R. Bankr. P. 7001(4).

In 1980, all objections to discharge required the filing of an adversary complaint, *see* Fed. R. Bankr. P. 701(4); however, in 2010, Bankruptcy Rule 7001

48

was amended to create an exception for objections to discharge under §§ 727(a)(8), (a)(9), and 1328(f).  These exceptions, which essentially involve calculating the time since the filing of previous cases resulting in discharges, are "more easily resolved" and do not require "the more formal procedures applicable to adversary proceedings, such as commencement by a complaint."  *See* 2010 Advisory Committee Note to Fed. R. Bankr. P. 7001.

Moreover, the standard under § 707(b) is whether "the granting of relief would be an abuse of this chapter" – *i.e.*, chapter 7.  That a debtor may legitimately benefit from or even need relief under chapter 11 or chapter 13 has nothing to do with whether "the granting of relief would be an abuse of [chapter 7]" under § 707(b).  Section 707(b) expressly provides for the conversion of a case to chapter 11 or chapter 13 in response to the filing of a § 707(b) motion, with the debtor's consent.  It is this Court's experience that debtors facing § 707(b) motions will often opt to convert their cases to chapter 13.

It seems doubtful that Congress intended for all such disputes (*i.e.*, "contested matters"), whether large or small, to constitute discrete "civil actions" under 28 U.S.C. § 2412 and therefore provide for potential fee shifting whenever any such disputes involve the United States or an agency or officer of the United States.  *Cf. Bullard v. Blue Hills Bank*, 135 S. Ct. 1686 (declining to

49

hold that a every order resolving a contested matter is final and appealable).  "The concept of finality cannot stretch to cover, for example, an order resolving a disputed request for an extension of time."  *Id.* at 1694.

Nor does the language in Bankruptcy Rule 9002 (or its predecessor Rule 902) support the debtor's initial argument that she is the prevailing party in a bankruptcy case, as opposed to a contested matter.  There is nothing in the Bankruptcy Rules to indicate that, when certain civil rules are made applicable to a bankruptcy case, any reference to "action" or "civil action" in the civil rules should be read as "bankruptcy case."  Nor is there anything in the Bankruptcy Rules to indicate that, when certain civil rules are made applicable to a bankruptcy case, any reference to "complaint" in the civil rules should be read as a "bankruptcy petition."  In contrast, Rule 3 of the Federal Rules of Civil Procedure, which applies in adversary proceedings under Bankruptcy Rule 7003, reads as follows (as translated by Bankruptcy Rule 9002):  "A[n] ~~civil action~~ [adversary proceeding] is commenced by filing a complaint with the court."

### *Debtor's Other Arguments Are Unavailing*

The debtor asserts that excluding bankruptcy cases and/or contested matters in bankruptcy cases from "civil actions" for which fee shifting is available under 28 U.S.C. § 2412 would contravene the policy of protecting debtors from

50

unjustified positions taken by the United States and its agencies and officers in such cases and matters. This policy argument, however, is best addressed to Congress. *See Ardestani v. I.N.S.*, 502 U.S. at 138 (while acknowledging that Ardestani had been forced to shoulder the financial and emotional burdens of a deportation hearing in which the agency's position was determined not to be substantially justified, the Court indicated "[I]t is the province of Congress, not this Court, to decide whether to bring administrative deportation proceedings within the scope of the statute."). Indeed, not long after the Supreme Court ruled in *Nordic Village* that § 106 of the Bankruptcy Code did not unequivocally waive sovereign immunity with respect to the bankruptcy trustee's action against the United States, Congress amended the sovereign immunity waiver provisions of § 106. *See* Pub. L. 103-394, 108 Stat. 4117.

Moreover, even if the EAJA does not apply to bankruptcy cases or contested matters in bankruptcy cases, a number of other fee shifting provisions in the Bankruptcy Code presumably do apply to the United States. For example, § 106 of the Bankruptcy Code waives sovereign immunity for governmental units, including the United States and its agencies, with respect to numerous sections of the Bankruptcy Code, including actions to recover damages and attorney's fees for willful violations of the automatic stay under § 362(l) and actions to recover

51

damages and attorney's fees against creditors who file an involuntary petition in

bad faith under § 303(i).

Section 106 does not, however, waive sovereign immunity with respect to

§ 707. *See* 11 U.S.C. §§ 106 (waiver of sovereign immunity) & 101(27) (defining

"governmental unit"). Moreover, when Congress amended the Bankruptcy Code

in 2005, it included fee-shifting provisions specifically for motions filed under

§ 707(b). *See* 11 U.S.C. §707(b)(4) and (b)(5); Pub. L. 109-8, 119 Stat. 27.

Under § 707(b)(4), "The court . . . may order the attorney for the debtor to

reimburse the trustee for all reasonable costs in prosecuting a motion filed under

section 707(b), including reasonable attorneys' fees," if the court finds that the

debtor's attorney violated Bankruptcy Rule 9011 in filing the case under chapter 7.

11 U.S.C. § 707(b)(4).

Under § 707(b)(5):

[Subject to certain exceptions,] the court . . . may award a debtor all
reasonable costs (including reasonable attorneys' fees) in contesting a
motion filed by a party in interest (other than a trustee or United
States trustee (or bankruptcy administrator, if any)) under this
subsection if –

(i) the court does not grant the motion; and

(ii) the court finds that

(I) the position of the party that filed the motion violated
[Rule 9011]; or

52

> (II) the attorney (if any) who filed the motion did not
> comply with the [reasonable investigation and other]
> requirements of clauses (i) and (ii) of paragraph (4)(C), and the
> motion was made solely for the purpose of coercing a debtor
> into waiving a right guaranteed to the debtor under this title.

11 U.S.C. §707(b)(5). Thus, § 707(b)(5) appears to preclude an award of fees in

the debtor's favor when the motion is filed "by the trustee or United States

trustee," at least with respect to this fee-shifting provision intended specifically for

motions filed under § 707(b). Although these specific fee-shifting provisions bring

to mind Justice Scalia's description of the "mind-numbingly detailed" exemption

language in 11 U.S.C. § 522, *see Law v. Siegel*, 571 U.S. 415, 424 (2014), they

appear to codify a Rule 9011 standard, subject to a host of exceptions.

Section 106 also waives sovereign immunity with respect to orders and

judgments, including monetary awards, fees, and costs, but not punitive damages,

under the Federal Rules of Bankruptcy Procedure. Thus, the United States is

subject to sanctions under Bankruptcy Rule 9011. Presumably, if the debtor

believed that the U.S. Trustee's § 707(b) motion violated Bankruptcy Rule

9011(b), nothing in the Bankruptcy Code, including § 707(b)(5), would have

prevented the debtor from serving a motion for sanctions, consistent with the

safe-harbor provisions of Rule 9011, asking that the § 707(b) motion be

withdrawn, and if it were not withdrawn, seeking an award of sanctions, including

53

attorney's fees. *See also Baker Botts v. ASARCO*, 576 U.S. at 134 n.4 (noting that Rule 9011 is available to address concerns about the possibility of frivolous or other filings that violate Rule 9011, and that court may direct payment of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation).

Although the debtor notes the differences between potential remedies available under Rule 9011 and an award of attorney's fees under the EAJA, Rule 9011 does seem to protect against just the type of action that the debtor alleges the U.S. Trustee took in this case. Specifically, the debtor alleges that the U.S. Trustee filed the § 707(b) motion without first making a reasonable inquiry into what a properly calculated means test would show. If these allegations are true, such conduct would presumably be a violation of Rule 9011(b).

*The Court's Ruling Makes It Unnecessary To Address Other Issues*

This ruling makes it unnecessary to address other potentially difficult issues, such as:

(1) whether the more general fee shifting provisions of the EAJA can be harmonized with the detailed fee-shifting provisions specific to § 707(b) motions that Congress enacted in 2005, which expressly exclude fee awards for motions brought by a chapter 7 trustee or a U.S. Trustee; *cf. United States v. Khan,*

54

497 F.3d 204, 211 (2d Cir. 2007) (holding that the specific fee-shifting provisions of the Civil Asset Forfeiture Reform Act of 2000 (CAFRA) "are irreconcilably at odds" with the EAJA);

(2) whether the debtor can qualify as a "prevailing party" given that the U.S. Trustee voluntarily withdrew the § 707(b) motion before any ruling from the Court. *See Buckhannon*, 532 U.S. at 604 ("These decisions, taken together, establish that enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees."); *cf.* 11 U.S.C. § 707(b)(5)(A)(i) (statute permits fee shifting when "the court does not grant the [§ 707(b) motion]," which presumably includes situations where the § 707(b) movant voluntarily withdraws the motion without a court ruling);

(3) whether the position of the U.S. Trustee in filing the motion was substantially justified;

(4) whether "special circumstances make an award [of attorney's fees under the EAJA] unjust," 28 U.S.C. § 2412(d)(1)(A), including Congress's enactment of detailed fee shifting provisions specific to § 707(b) motions in 2005; *cf. Bush v. Lucas*, 462 U.S. 367, 378 (1983) (existence of alternative remedy structure

constitutes "special factor[] counselling hesitation" in establishing *Bivens* action); and

(5) the reasonableness of the fees requested.

***

The Court does not wish to encourage further litigation of the issues in this case. Nevertheless, should the debtor be inclined to appeal this Court's decision, the Court believes that certification of a direct appeal to the Sixth Circuit under 28 U.S.C. § 158(d) and Bankruptcy Rule 8006 may well be appropriate given the absence of a controlling decision from the Sixth Circuit or the Supreme Court. And, if a reviewing court were to find that the debtor is in fact a "prevailing party" in a "civil action" for purposes of the EAJA, this Court would certainly benefit from any guidance (1) delineating the applicable "civil action," and (2) explaining what is necessary to be a "prevailing party" in the context of bankruptcy cases or contested matters.

Finally, the Court notes that, for purposes of this decision, it need not decide and does not decide whether adversary proceedings are "civil actions" within the meaning of 28 U.S.C. § 2412.

56

## CONCLUSION

The debtor's motion for an award of attorney's fees and costs under the EAJA is denied.

IT IS SO ORDERED.